UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BELL, #201585,

Petitioner,

CASE NO. 5:09-CV-14423
v.                                                        HONORABLE JOHN CORBETT O'MEARA

NICK LUDWICK,

Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.      Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner James Bell

("Petitioner") was convicted of first-degree murder, MICH. COMP. LAWS § 750.316, following a jury

trial in the Wayne County Circuit Court and was sentenced to life imprisonment without the

possibility of parole in 2005. In his pleadings, Petitioner raises claims concerning the admission of

other acts evidence, the sufficiency of the evidence and the denial of a directed verdict motion, the

effectiveness of appellate counsel, and a request for transcripts. For the reasons set forth herein, the

Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of

appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.     Facts and Procedural History**

Petitioner's conviction arises from the death of his girlfriend, LaShonda Monroe, in Detroit,

Michigan in 2004. The Michigan Court of Appeals summarized the case as follows:

On September 13, 2004, the dead body of a female was found wrapped in plastic

bags in the basement of an abandoned house. On October 6, 2004, defendant was approached by a police officer while standing in the middle of the road. When he moved to the side of the road, defendant stated to the officer that he had killed his girlfriend and placed her body in a basement. Defendant then directed officers to the abandoned home where the body had previously been found and was charged with murder shortly thereafter. Defendant was convicted by jury of first-degree premeditated murder and sentenced to life in prison without parole.

*People v. Bell*, No. 263184, 2006 WL 3422553, *1 (Mich. Ct. App. Nov. 28, 2006) (unpublished).

At trial, Charles Jackson testified that he found the body of a woman wrapped in plastic in the basement of a vacant house on September 13, 2004. He flagged down police officers and directed them to the body. Detroit Police Officer Rhonda Lewis testified that she was working on the street when Mr. Jackson flagged her down and directed her to an abandoned house. She observed a body wrapped in a black garbage bag at the bottom of the stairs of the basement. She contacted Homicide detectives and preserved the scene.

Detroit Police Officer Matthew Guigar testified that he was working routine patrol on October 6, 2004 when he observed Petitioner standing in the middle of the road at approximately 4:30 a.m. When he asked Petitioner if he needed assistance, Petitioner stated that he had killed his girlfriend and buried her in a basement. Guigar took Petitioner to the 13th Precinct and called the Homicide Section. Guigar spoke with Petitioner at the station. Petitioner then directed the police to the abandoned house. There was no body when they arrived at the house, but Guigar saw yellow tape and blue latex gloves, which led him to believe that other officers might have removed the body sometime earlier. Guigar subsequently contacted the Medical Examiner's Office and the Homicide Section and obtained additional information. He then arrested Petitioner.

Teresa Tyson testified that she knew Petitioner from her apartment building and that she knew a woman named Lashonda who lived with Petitioner at various times. She recalled that

2

Petitioner asked her for tape one day in August, 2004.  Later that day, she observed him carrying black garbage bags.  She said that he had a funny look on his face and gauze on his neck.  She later observed scratches on his neck.

Dr. Melissa Pasquales Styles from the Wayne County Medical Examiner's Officer testified that, at the time of autopsy, the victim was wrapped in two large black plastic garbage bags and her wrists were duct taped tightly together in front of her abdomen.  The body was in an advanced state of decomposition and it was estimated that she had been dead for several weeks.  There was no evidence of gunshot or stab wounds.  There were traces of alcohol and drugs in her system, but there was no indication that those substances or natural disease played a part in her death.  The manner of death was classified as a homicide and the cause of death was violence of undetermined etiology due to the body's decomposition.  Dr. Styles testified that 50% of women who suffer manual strangulation have neck fractures, but the victim had no visible neck fractures.  She further testified that it could take several minutes for someone to die after being choked.

Detroit Police Investigator Barbara Simon testified that she advised Petitioner of his constitutional rights and took his statement.  Petitioner told her that he and the victim had been boyfriend and girlfriend for about a year and moved around a lot.  Sometime in September, 2004, they got into an argument over money which escalated into a physical altercation.  He grabbed the victim by the neck, pushed her against a wall, and choked her until she passed out.  He laid her on the bed and left the house for a period of time.  When he returned, he wrapped the victim's body in a plastic bag and took it to the basement of a vacant house.  Petitioner also told Simon that he had choked someone to death before, that he confessed to the crime, that he was sentenced to 8 to 15 years in prison, and that he served eight years and was released in 1995.  He also identified some

jewelry and clothing items worn by the victim.

Detroit Police Evidence Technician Eugene Fitzue testified that he went to the scene on September 13, 2004 and observed a decomposed body wrapped in duct tape. He also went to Petitioner's apartment where he found a heavy mill black plastic bag and a black plastic bag in the dining room. He observed drops of blood under a carpet remnant.

Teresia Brown testified that she had a romantic relationship with Petitioner for several years. While they were living together in June, 2002, she and Petitioner got into an argument over money. Petitioner put his hands around her throat and choked her. He stopped when she threw the money on the ground. He threatened to hit her, but did not threaten to kill her. She reported the incident to the police.

Eddie Williams testified that he owned the apartment building where Petitioner lived. In September of 2004, he observed a bucket of blood with a shirt in it in the bathtub and some blood on the mattress. He told Petitioner to clean it up. He also observed gauze on Petitioner's neck and wrists a week or so later.

After the prosecution rested, defense counsel moved for a directed verdict. The trial court denied the motion. Petitioner did not testify at trial and did not present additional witnesses. The jury convicted Petitioner of first-degree murder. The trial court sentenced him to the mandatory term of life imprisonment without the possibility of parole.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that: (1) the trial court erred in admitting other acts evidence under Michigan Rule of Evidence 404(b), and (2) the trial court erred in admitting his incriminating statements into evidence because the corpus delicti of murder had not been established and erred in denying his directed

verdict motion. The court denied relief on those claims, finding that the first had been waived and the second had been defaulted and lacked merit, and affirmed Petitioner's conviction. *People v. Bell*, No. 263184, 2006 WL 3422553 (Mich. Ct. App. Nov. 28, 2006) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Bell*, 477 Mich. 1114, 729 N.W.2d 873 (2007).

Petitioner then filed a motion for relief from judgment with the state trial court asserting that: (1) appellate counsel was ineffective for failing to obtain transcripts relevant to his other acts claim and for failing to inform him of issues and strategies, (2) he was never legally established as being the criminal agency that caused the victim's death, and (3) the prosecution failed to establish beyond a reasonable doubt that he was the cause of the victim's death. The trial court denied the motion, ruling that Petitioner had not shown that appellate counsel was ineffective and that the other two claims had been decided against him on direct appeal. *People v. Bell*, 04-012850-01 (Wayne Co. Cir. Ct. May 8, 2008) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bell*, No. 287039 (Mich. Ct. App. Jan. 22, 2009) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Bell*, 485 Mich. 890, 772 N.W.2d 412 (2009).

Petitioner thereafter instituted this federal habeas action raising the claims presented to the state courts on direct appeal and collateral review of his conviction. Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.

III.    <u>**Standard of Review**</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C.

§ 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective

date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes

a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010)

(quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even

a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must

determine what arguments or theories supported or . . . could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.

*Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state

court's rejection of his claim "was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the

state court's decision comports with clearly established federal law as determined by the Supreme

Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also*

*Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has

held on numerous occasions that it is not 'an unreasonable application of clearly established Federal

law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.   Analysis

### A.   Other Acts Evidence (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence, namely testimony indicating that he had choked a former girlfriend and that he had previously been convicted and served time in prison for another choking death. The

Michigan Court of Appeals denied relief on this claim, finding that Petitioner had waived it by failing to file the relevant transcripts. *Bell*, 2006 WL 3422553 at *1.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting testimony under the Michigan Rules of Evidence, he merely alleges violations of state law which do not entitle him to federal habeas relief. *See, e.g., Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, as to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates

fundamental conceptions of justice.  *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1]
Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates
due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329
F.3d 496, 512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state
court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id*. at 513; *see also*
*Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).  Petitioner has thus failed to state a
claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief.
Petitioner has not shown that the admission of the other acts evidence rendered his trial
fundamentally unfair.  The testimony regarding his past actions of choking other women was
relevant and admissible under state evidentiary law on the issues of motive and intent, as well as
lack of accident or mistake.   Moreover, the trial court instructed the jury on the proper
consideration of such evidence.  Jurors are presumed to follow a trial court's instructions.  *See*
*Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211
(1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law
as charged, and they are expected to follow it.").  Petitioner has failed to establish that the
admission of the other acts evidence was erroneous or, more importantly, that it rendered his trial
fundamentally unfair.  Habeas relief is not warranted on this claim.

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible
under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997);
*Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in
constitutional terms.

**B.**     **Insufficient Evidence (Habeas Claims II, V, VI)**

Petitioner also asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his first-degree murder conviction and the trial court erred in denying his motion for a directed verdict.  Specifically, Petitioner asserts that the prosecution presented insufficient evidence of the corpus delicti of the charge, particularly the intent to kill, and that the prosecution never established that he was the cause of the victim's death.

The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews*

11

*v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *See People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); MICH. COMP. LAWS § 750.316. Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide."  *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999).  The prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  *See People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *see Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409, 149 N.W.2d 216; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985), and the defendant's intent or state of mind.  *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402–403, 614 N.W.2d 78 (2000).

In this case, the Michigan Court of Appeals ruled that the prosecution satisfied the corpus delicti rule and that the prosecution presented sufficient evidence to support Petitioner's first-degree murder conviction, such that the trial court did not err in denying Petitioner's motion for a directed

verdict.  The court explained:

> Defendant failed to object to the admission of his incriminating statements on the ground that the corpus delicti of first-degree murder had not been established, and thus, defendant failed to properly preserve this argument. *People v. Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Thus, we will review defendant's corpus delicti argument for plain error which affected his substantial rights. *People v. Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003); *People v. Carines*, 460 Mich 750, 763, 773; 597 NW2d 130 (1999).

> "The corpus delicti rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury [or loss] and criminal agency as the source of the injury before such statements may be admitted as evidence." *People v. Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). The corpus delicti of murder is death caused by criminal agency. *People v. McMahan*, 451 Mich 543, 549; 548 NW2d 199 (1996). "The corpus delicti rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v. Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). "Proof of the identity of the perpetrator of the act or crime is not a part of the corpus delicti." *Id*. at 270. It is sufficient to show that someone committed the crime. *Id.*

> Here, the victim's dead body, which was wrapped in black plastic bags that were duct taped together, was found in the basement of an abandoned house. Dr. Pasquales Styles, who was qualified as an expert in forensic pathology and examined the victim's body, stated that the victim's wrists were duct taped together, that there were no signs of a natural or drug-induced death, and that it was her conclusion that the manner of the victim's death was homicide. Without using any of defendant's statements, then, circumstantial evidence was provided that established a "death caused by criminal agency." Thus, the corpus delicti of first-degree murder was established, and the trial court did not abuse its discretion, let alone commit plain error, when it allowed defendant's incriminating statements into evidence. *McMahan, supra*, p 549; *Burns, supra*, p 438. Accordingly, the trial court properly considered defendant's statements when ruling on defendant's motion for a directed verdict.

> Defendant properly preserved his directed verdict argument by making a motion for a directed verdict. *People v. Aldrich*, 246 MichApp 101, 122; 631 NW2d 67 (2001). Thus, we will review the record de novo to determine whether the evidence presented by the prosecutor, up to the time the motion was made, viewed in the light most favorable to the prosecutor, could have persuaded a rational trier of fact that the essential elements of first-degree murder were proven beyond a reasonable doubt. *People v. Werner*, 254 MichApp 528, 530; 659 NW2d 688 (2002). In engaging in such a review, we will afford deference to the jury's special opportunity

13

and ability to determine the credibility of witnesses. *People v. Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992).

The elements of first-degree premeditated murder are (1) that the defendant killed the victim, and (2) that the killing was willful, deliberate, and premeditated, or committed in the course of a felony enumerated in MCL 750.316. *People v. Bowman*, 254 Mich App 142, 151; 656 NW2d 835 (2002). Premeditation and deliberation characterize a thought process undisturbed by hot blood and require sufficient time to permit the defendant to reconsider his actions; they may be established by evidence of the prior relationship of the parties, the defendant's actions before the killing, the circumstances of the killing itself (including the weapon used and the location of the wounds inflicted) and the defendant's conduct after the homicide. *People v. Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999); *People v. Plummer*, 229 Mich App 293, 299-301; 581 NW2d 753 (1998). Circumstantial evidence and reasonable inferences from the evidence can be sufficient to prove the elements. Id. A defendant's intent "is a question of fact to be inferred from the circumstances by the trier of fact." *People v. Kieronski*, 214 Mich App 222, 232; 542 NW2d 339 (1995).

In this matter, the evidence at trial established that the victim's dead body, which was wrapped in black plastic bags that were duct taped together, was found in the basement of an abandoned house. When officer Eugene Fitzue went to defendant's apartment, he observed black plastic bags in the living room and blood on the bedroom floor. Furthermore, Teresa Tyson testified that defendant asked her for some tape, and that later in the day she saw defendant, who had scratches on his neck, carrying black garbage bags. Moreover, Eddie Williams, who owned the apartment complex that defendant lived in, testified that in September of 2004 he saw a bucket of blood with a white shirt in it in defendant's apartment, as well as blood on defendant's mattress. Most importantly, defendant told officer Matthew Guigar that he had killed his girlfriend and buried her in a plastic bag in an abandoned basement. Additionally, defendant's written statement that was taken by officer Barbara Simon indicates that he and the victim got into an argument over money in September of 2004 that escalated into pushing and hitting, and eventually resulted in defendant pushing the victim up against a wall and choking her until she passed out. Defendant's written statement further indicated that after an unspecified amount of time passed and the victim was still not moving, defendant put the victim's body into a black plastic bag and moved her down the street to a vacant house and left her in the basement of the house. Therefore, viewing the evidence presented by the prosecutor, up to the time defendant made his motion for a directed verdict, in a light most favorable to the prosecution, we conclude that a rational trier of fact could reasonably infer that defendant killed the victim and that his actions were premeditated and deliberate. *Abraham, supra*, p 656; *Kieronski, supra*, p 232. Thus, the trial court properly denied defendant's motion for a directed verdict.

14

*Bell*, 2006 WL 3422553 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as an initial matter, the Court notes that Petitioner's corpus delicti claim is not cognizable upon habeas review. Michigan has a corpus delicti rule that requires that the prosecution establish the substance of the crime charged independent of the defendant's own extrajudicial statements. *See People v. Williams*, 422 Mich. 381, 388, 373 N.W.2d 567 (1985). The Michigan Court of Appeals resolved this state law issue. It is well-settled that a federal habeas court may not review a state court's decision applying purely state law. *See, e.g., Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"). Michigan's corpus delicti rule has no independent constitutional basis and is not constitutionally mandated. *See Williams v. LeCureaux*, 9 F.3d 111, 1993 WL 445090, *1 (6th Cir. Nov.2, 1993) (unpublished); *Ruggles v. Michigan Dept. of Corrections*, No 2:08–CV–14706, 2011 WL 1812206, *7 (E.D. Mich. May 12, 2011); *Davidson v. Burt*, No. 2:08-CV-13464, 2011 WL 204333, *6 (E.D. Mich. Jan. 21, 2011); *Phillips v. Lafler*, No. 06-15192, 2009 WL 1508343, *4 (E.D. Mich. May 28, 2009); *Emerson v. Smith*, No. 00–CV–73044, 2001 WL 561212, *12 (E.D. Mich. Apr. 13, 2001); *accord Evans v. Luebbers*, 371 F.3d 438, 442–43 & n. 3 (8th Cir. 2004); *Lucas v. Johnson*, 132 F.3d 1069, 1077 (5th Cir. 1998). Habeas relief is not warranted on the basis of any such perceived state law error.

Second, the record reveals that the prosecution presented sufficient evidence to establish Petitioner's guilt of the charged offense beyond a reasonable doubt. The testimony of Petitioner's neighbor and landlord about his activities and his apartment, the forensic testimony indicating that the victim died from violence and not from drugs or natural causes, the condition in which the

15

victim's body was found, and Petitioner's own admissions to police regarding his actions in choking the victim (while knowing that such action could lead to death) and disposing of her body provided ample evidence that he committed the crime and that he acted with the requisite intent to support his first-degree murder conviction.

Petitioner challenges the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The trial testimony and evidence, viewed in a light most favorable to the prosecution, established beyond a reasonable doubt that Petitioner caused the victim's death and that he possessed the requisite intent for first-degree murder. More importantly, for purposes of habeas review, this Court cannot say that the Michigan Court of Appeals' ruling to that effect was unreasonable. Habeas relief is not warranted on these claims.

### C.   Ineffective Assistance of Appellate Counsel (Habeas Claims III, IV)

Petitioner next asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to submit transcripts relevant to his other acts claim on direct appeal, for failing to inform him of issues and strategies, and for failing to raise a confrontation claim concerning the forensic testimony.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth

a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690. A reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their

17

performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

In this case, the state trial court ruled that Petitioner has not shown that appellate counsel was ineffective under the *Strickland* standard, *see Bell*, No. 04-012850 at *3-4, and the Michigan

appellate courts denied leave to appeal. The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof. While counsel's failure to file the required transcripts on direct appeal concerning his evidentiary claim was arguably deficient, Petitioner cannot establish that he was prejudiced by counsel's conduct given that the admission of the other acts evidence was proper under Michigan law. *See* discussion *supra*.

As to the other claims, Petitioner has failed to establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct. Petitioner has failed to explain with specificity what information counsel should have uncovered or what strategies counsel could have employed that would have affected the outcome of appeal. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).

Petitioner has also failed to demonstrate a confrontation violation as to the forensic testimony. The Confrontation Clause thus guarantees a criminal defendant the right to confront the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315 (1973). The main purpose of confrontation is to secure the opportunity for cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The right to confrontation bars the admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68

19

(2004). In this case, Dr. Styles testified about her own examination of the victim's body and her opinions and findings. She further testified that she prepared the addendum to the autopsy report for her supervisor Dr. Diaz to sign. Petitioner therefore had the opportunity to cross-examine the witness against him, Dr. Styles, at trial. Moreover, to the extent any confrontation error occurred, such an error was harmless given the overwhelming evidence of Petitioner's guilt.

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues on appeal. Petitioner has not shown that appellate counsel's strategy in presenting those claims and not the claims in the motion for relief from judgment was unreasonable. He has thus failed to establish that appellate counsel was ineffective. Habeas relief is not warranted on these claims.

### D.    Transcripts (Habeas Claim VII)

Lastly, Petitioner asserts that he is entitled to habeas relief because the state courts erred in denying his request for transcripts while he was seeking collateral review. The state trial court denied the request for transcripts on collateral review because defense counsel had received transcripts on direct appeal, *see Bell*, No. 04-012850-01 at *5, and the Michigan appellate courts denied leave to appeal in standard orders. The state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application thereof. It is well-established that a prisoner does not have a constitutional right to collaterally attack a final judgment of conviction. *See United States v. MacCollom*, 426 U.S. 317, 323 (1976); *Carter v. Bradshaw*, 644 F.3d 329, 337 (6th Cir. 2011). It follows that a prisoner has no constitutional right to transcripts to prepare for post-conviction collateral proceedings. *See Rickard v. Burton*, 2 F. App'x 469, 470 (6th Cir. 2001)

20

(citing *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir.1992)); *see also MacCollom*, 426 U.S. at 325-26 (upholding constitutionality of statute limiting availability of free transcripts in federal habeas actions). Petitioner has failed to state a claim upon which habeas relief may be granted. *See Freeman v. Lafler*, No. 2:09–CV–10518, 2012 WL 32677, *3 n. 4 (E.D. Mich. Jan. 6, 2012) (denying habeas relief on similar claim). His allegations regarding his need for transcripts are also conclusory in nature. Petitioner has thus failed to establish a constitutional violation. Habeas relief is not warranted on this claim.

**V.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained his habeas petition and the petition must therefore be denied.[2]

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37. The Court concludes that Petitioner

---

[2] Given this merits determination, the Court need not address Respondent's procedural default arguments.

21

has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims.  A certificate of appealability is not warranted.  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as any appeal cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.


s/John Corbett O'Meara
United States District Judge

Date:  January 26, 2012


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 26, 2012, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager

22